UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

CHARLES W. TOLAND, Jr.,

                    Petitioner,                          **REPORT AND**
                                                         **RECOMMENDATION**

          V.                                             02-CV-399
                                                         (GLS/VEB)
JAMES J. WALSH,

                    Respondent.

─────────────────────────────────────────


## I. INTRODUCTION

Petitioner Charles Toland, Jr., acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Sullivan Correctional Facility. In 1996, he was convicted in a New York State court of two counts of Murder in the Second Degree, one count of Kidnapping in the First Degree, two counts of Assault in the First Degree, and one count of Unlawful Imprisonment in the First Degree and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to this Court by the Honorable Norman A. Mordue, Chief United States District Judge, for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 41).

## II. BACKGROUND

**A.    Facts**

The following factual summary is derived from the state court records provided in this case.  On August 5, 1995, in Schenectady, New York, Jackie Polomaine ("victim") was found dead in the basement of the apartment she shared with Wanda Gonzales ("Gonzales").  (T[1] at 2378-80, 2469-70).

The previous day, August 4, 1995, Gonzales and the victim had plans to meet at a local bar.  At approximately 6:30 in the evening, Gonzales called the apartment and talked with the victim, who was in the process of getting ready.  The victim stated that Petitioner was with her and Gonzales spoke with him.  (T at 2254).  The victim asked Gonzales to call her later in the evening to confirm her plans.  (T at 2256).  Gonzales did call the victim later that evening, but the victim did not answer the phone.  (T at 2268).

Later, when Gonzales arrived home, she found the victim's car parked in front of their apartment ,where it had been located earlier.  (T at 2269-2270).  Inside the apartment, Gonzales found that furniture had been moved, the victim's bed was in disarray, and her jewelry was laid out on a coffee table.  (T at 2293-2298).  Concerned, Gonzales called the victim's mother, as well as area hospitals, but was unable to locate her.  (T at 2303-2304).

In the morning of August 5, 1995, Gonzales had a "weird feeling" that caused her to look in the basement of her apartment building.  (T at 2352).  In the laundry room, Gonzales saw a piece of the belt from her bathrobe on the floor near a door to an area between the wall and the foundation in the basement. (T at 2372, 2376).  Gonzales opened

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

the door and found the victim dead, lying face down on the floor, with her hands tied behind her back with a brown work boot shoelace. (T at 2380). Later examination of the victim's body showed that she had been gagged with a sock and bound with shoelaces at both her wrists and ankles, that her hands and feet had been tied behind her back, and that her skull had been crushed from behind, most likely by a 56-pound rock that was found nearby with traces of the victim's blood on it. (T at 2665, 2667, 2669-70, 2756-66, 2777-78, 2782).

The initial police investigation focused on the victim's boyfriend, Martin McCollum, who was extensively questioned, searched, and eventually eliminated as a suspect. Thereafter, the investigation turned to Petitioner, as he was the last known person with the victim prior to her death. The police discovered evidence tending to incriminate Petitioner, including a videotape depicting a former girlfriend of Petitioner "hog tied" (as the victim had been) and engaging in sexual bondage with Petitioner. The police also learned that Petitioner left Schenectady the day after the murder with a one-way bus ticket purchased that morning. When interviewed, Petitioner gave conflicting stories as to why he was with the victim on the night of the murder.

Petitioner was thereafter arrested and on November 9, 1995, he was arraigned[2] on Schenectady County Grand Jury Indictment Number 995-13, which charged him with three counts of Murder in the Second Degree, in violation of New York Penal Law ("NYPL") §§125.25(1) (intentional), 125.25(2) (depraved indifference), and 125.25(3)(in the course of kidnapping and sexual abuse);[3] two counts of Kidnapping in the First Degree, in violation

---

[2]Petitioner was represented at arraignment by Schenectady County Public Defender, Martin Cirincone.

[3]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

of NYPL §§ 135.25(2)(a) and 135.25(3); two counts of Sexual Abuse in the First Degree, in violation of NYPL §§ 130.65(1) and 130.65(2); two counts of Assault in the First Degree, in violation of NYPL §§ 120.10(1) and 120.10(4); one count of Reckless Endangerment in the First Degree, in violation of NYPL §120.25; and one count of Unlawful Imprisonment in the First Degree, in violation of NYPL § 135.10.

**B.    State Trial Court Proceedings**

The Honorable Michael C. Eidens, Schenectady County Court Judge, presided over Petitioner's trial proceedings.  Following several days of jury selection, the presentation of evidence began on May 22, 1996, and the trial lasted approximately eight weeks.[4] Petitioner was represented at trial by Michael Horan, Esq., of the Schenectady County Public Defender's office and Margaret Gillis, Esq., an attorney with the firm of Whiteman, Osterman and Hanna, who worked on the case *pro bono*.

On July 9, 1996, the jury found Petitioner guilty of two counts of Murder in the Second Degree, in violation of NYPL §§ 125.25(1),(3), one count of Kidnapping in the First Degree, in violation of NYPL § 135.25(3), two counts of Assault in the First Degree, and Unlawful  Imprisonment in the First Degree. (T at 6039-6048).[5]

On August 19, 1996, Petitioner was sentenced to two consecutive terms of

---

[4]The state court records provided to this Court consist of over 6,000 pages of transcript.  There were over 90 witnesses called to testify and close to 300 exhibits entered into evidence.  In addition, there are volumes of materials related to Petitioner's state court appeals.

[5]Because the transcript from Petitioner's trial demonstrates that the jury made no specific finding of guilt as to certain charges against him, it follows that Petitioner was found not guilty of the charges for Sexual Abuse in the First Degree, one count of Kidnapping in the First Degree, and one count of Reckless Endangerment in the First Degree.

imprisonment of 25 years to life on the intentional murder conviction and the kidnapping conviction, one consecutive sentence of 5 to 15 years on one of the assault convictions, one concurrent term of 25 years to life on the other murder conviction, one concurrent term of 5 to 15 years on the other assault conviction and one concurrent term of 1 1/3 to 4 years on the unlawful imprisonment conviction.  Therefore, Petitioner's total aggregate sentence was 55 years to life.

## C.  State Appellate Proceedings

On December 1, 1999, Petitioner, proceeding *pro se*, moved pursuant to CPL § 440.10 to vacate his conviction based on newly discovered evidence. (AA[6] at A1).  On June 20, 2000, the county court denied his motion.  (AA at A172-176).

Thereafter, Petitioner, represented by Adam G. Parisi, Esq.[7], appealed his conviction and the order of the county court denying his CPL § 440 motion to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner, through his attorney, asserted three arguments on appeal: (1) that Petitioner was denied effective assistance of trial counsel, (2) that Petitioner was denied a fair trial as a result of prosecutorial misconduct, and (3) that his CPL § 440.10 motion to vacate judgment based upon newly discovered evidence should have been granted.

Petitioner also filed a pro se supplemental brief asserting: (4) that evidence of uncharged crimes was improperly admitted against him, (5) that the county court erred in

---

[6]References preceded by the letters "AA" refer to the Appellant's Appendix on appeal before the Appellate Division, Third Department.

[7]Adam Parisi, Esq. is an attorney with The Harding Law Firm located in Glenville, New York.

imposing consecutive terms of imprisonment for his kidnapping and murder convictions, and (6) reasserting the three claims presented by his appellate attorney.

In a decision issued on June 28, 2001, the Appellate Division affirmed Petitioner's conviction, but modified his sentence. People v. Toland, 284 A.D.2d 798 (3rd Dept 2001). The Appellate Division found that the trial court erred in sentencing Petitioner to consecutive sentences for his convictions of murder and kidnapping and modified those sentences to run concurrently, resulting in a total aggregate sentence of thirty (30) years. Id. at 806.   Petitioner's application for leave to appeal to the Court of Appeals was denied on September 24, 2001.  People v. Toland, 96 N.Y.2d 942 (2001).

**D.  Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se*, commenced this action on March 19, 2002, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1). Petitioner was then ordered to amend his petition so that it more clearly stated the grounds on which he was seeking relief.  (Docket No. 3).  Thereafter, Petitioner filed his Amended Petition for a writ of habeas corpus on April 10, 2002.  (Docket No. 4).  Respondent then filed submissions in opposition.  (Docket No. 18, 19).  On March 24, 2003, Petitioner filed a Traverse in further support of his Amended Petition.  (Docket No. 26).

For the reasons that follow, the Court recommends that the Petition be DENIED.

**III. DISCUSSION**

6

**A.      Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

 Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d

112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case."  Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."  Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).


**B.    Petitioner's Claims**

Petitioner asserts six grounds in his Amended Petition.  Each claim will be

addressed below in turn.[8]

### 1.    Ineffective Assistance of Counsel

In his first ground for habeas relief, Petitioner asserts that he received ineffective assistance of trial counsel, and asserts five basis for his claim.  Specifically, Petitioner claims that his trial attorneys failed to: (a) present exculpatory witness evidence[9], (b) object to evidentiary stipulations, (c) challenge the time of death, (d) object to the hearsay testimony as to statements made by the victim the day before her body was discovered, (e) move to dismiss the indictment against him before trial based on his preclusion from testifying in front of the grand jury and that they did not allow him to testify at trial.  Each of these claims of ineffective assistance of trial counsel will be addressed below.

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test.  First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution.  <u>Id.</u> at 688, 104 S.Ct. 2052.  In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness."  <u>Id.</u>  Second,

---

[8]Petitioner lists his claims in a different order in his Memorandum of Law than he does in his Amended Petition.  <u>See</u> (Docket No. 4 vs. Docket No. 14).  However, this Court will address the claims in the order they are listed in the Amended Petition.

[9]In his memorandum regarding this portion of his ineffective assistance claim, Petitioner has one sentence which sets forth "Counsel failed to present exculpatory DNA evidence reports in their possession" and then he continues on with the rest of his argument.  However, Petitioner fails to include any factual support for that assertion.  Therefore, this Court will not address his DNA argument under the heading of "Exculpatory Evidence."  Petitioner discusses his DNA claim further in another section of his Amended Petition, and this Court will address that argument in turn.

a petitioner must show that counsel's deficient performance prejudiced him. Id. at 694, 104 S.Ct. 2052.

The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate.  "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. 2052.

### a.   Exculpatory Evidence

### i.   Testimony of Misty Gallo

Petitioner asserts that his counsel should have called ten-year old Misty Gallo to testify at his trial.   Although not a witness to the crime, Misty Gallo observed a suspicious male outside the victim's apartment the night of the murder.  (AA at A40).  Petitioner asserts that his attorneys should have called Gallo to testify at trial because when shown a photo array on August 5, 1995, Gallo failed to pick Petitioner out of the lineup.

However, Gallo's description to the police of the man she saw matches a description of Petitioner.  For example, Gallo told the police that she saw a black male wearing a "Charlotte Hornets" hat.  (Id.).  Petitioner is a black male and a Charlotte Hornets hat was recovered from his car during the murder investigation.   (T at 3708-09).   Under the circumstances, the decision by Petitioner's trial attorneys not to call Gallo can clearly be justified as a matter of trial strategy.

The Second Circuit has noted "courts should not confuse true ineffectiveness with losing trial tactics or unsuccessful attempts to advance the best possible defense. The Constitution guarantees a defendant a fair trial, not a perfect one." Henry v. Poole, 409

F.3d 48, 58 (2d Cir. 2005)(citing <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681(1986).

Numerous courts in this Circuit have recognized that "[g]enerally, the decision whether to pursue a particular defense is a tactical choice which does not rise to the level of a constitutional violation . . . [and] the habeas court will not second-guess trial strategy . . ." <u>Campbell v. Greene</u>, 440 F. Supp.2d 125, 150 (N.D.N.Y. 2006) (quoting <u>Nieves v. Kelly</u>, 990 F.Supp. 255, 264 (S.D.N.Y.1997)); <u>see</u> <u>also</u> <u>Schwamborn v. United States</u>, No. 06-CV-3178, 2007 WL 1799171, at *5 (E.D.N.Y. June 20, 2007) ("An informed decision to pursue a litigation strategy, even if that strategy turns out badly for the defendant or seems unwise in retrospect, does not constitute ineffective assistance of counsel so long as it is a 'conscious, reasonably informed decision made by an attorney with an eye to benefitting his client.'").

In the present case, this Court has no difficulty in concluding that the decision not to call Gallo was a tactical decision that did not rise to the level of a constitutional violation. Indeed, it would appear that the decision was well-founded in that Gallo's testimony would have been, on balance, more damaging than helpful to Petitioner. Therefore, this claim should be DENIED.

### ii.    Testimony of James Scott

Petitioner's next assertion with respect to his claim of ineffective assistance of trial counsel is that his trial attorneys should have called James Scott to testify.  Petitioner asserts that Scott made claims that law enforcement sought to have him lie about Petitioner's involvement in the murder in exchange for $750.00.[10]

---

[10]According to the "Index to Witnesses" list of those who testified at trial, James Scott was not called by the prosecution as a witness.

However, Scott provided conflicting accounts regarding how much he knew about the victim's murder.  Scott stated, at one point, he knew nothing about the murder except for what he heard in the news.  Thereafter, Scott asserted that he drove Petitioner to the victim's apartment and waited outside while Petitioner killed the victim.  See Mueller Affirmation in Response to CPL 440 Motion[11] at ¶¶ 10-13.

As with the testimony of Gallo, the decision not to call Scott to testify could reasonably be characterized as a strategic decision by Petitioner's trial attorneys.  To wit, Scott likely would not have been considered a credible witness, because of his contradictory versions of events, and would certainly have been carefully examined by the prosecution regarding his statement that he drove Petitioner to the apartment and waited while Petitioner committed the murder.  Petitioner's trial attorneys could have reasonably concluded that the prejudicial effect of this highly damaging testimony outweighed any arguable probative value.

Accordingly, this Court finds that the strategic decision not to call Scott did not give rise to a habeas claim based on a theory of ineffective assistance of counsel.  Henry v. Poole, 409 F.3d at 58; Strickland, 466 U.S. at 690-91(holding that the strategic choices of trial counsel "are virtually unchallengable" in habeas corpus proceedings).  Therefore, this claim should also be DENIED.

### b.    Evidentiary Stipulations

Petitioner next asserts that his trial attorneys' decision to stipulate to the admissibility

---

[11]Phillip W. Mueller, Esq., was the Deputy Chief Assistant District Attorney in the County of Schenectady in 2000.  His affirmation was based upon his personal knowledge as the lead attorney who prosecuted Petitioner's indictment.

of certain evidence constituted ineffective assistance of counsel.  Specifically, Petitioner argues that his attorneys should not have entered into a stipulation as to the time of a collect call he made to his father and a stipulation regarding the contents of DNA reports from Cellmark Laboratories.

### i.      Collect Phone Call

There was evidence in the record indicating that Petitioner made a collect telephone call to his father on the night of August 4, 1995.  The call was made from a pay phone at a convenience store approximately three miles from the victim's apartment.  The time of the call was relevant to Petitioner's whereabouts on the night of the murder.

The stipulation entered into by Petitioner's attorneys was that the call was placed at 8:19 p.m. Eastern Standard Time from Schenectady, New York.  Petitioner's father lived in St. Louis, Missouri and his phone records indicated that the collect call was made at 7:19p.m. in the central time zone.

In his Amended Petition, Petitioner contends that the call was made at 7:19p.m. in the eastern time zone and therefore the stipulation was in error.  However, Petitioner's father testified at trial that the phone call was received by him at 7:19p.m., central time.  (T at 5395).  Given the testimony of Petitioner's father and the phone records, counsel's strategic decision to stipulate as to the timing of the call did not rise to the level of a constitutional violation and, in fact, appears to have been entirely appropriate. See Horan v. Conway, 03-CV-0486, 2007 WL 1087492, at *10 (N.D.N.Y. Apr. 9, 2007); James v. Kelly, 648 F. Supp. 397, 403 (E.D.N.Y. 1986).  Therefore, this claim for ineffective assistance of counsel should be DENIED.

### ii.      DNA Reports

Petitioner next claims that his trial attorneys improperly stipulated to two DNA lab reports.  (Docket No. 14 at 18).  Petitioner states "[t]here was no reason to stipulate because the reports, as written, proved only the innocence of the Petitioner, and tended, to only again, establish reasonable doubt regarding guilt."  (Docket No. 14 at 18).

Construing Petitioner's *pro se* pleadings liberally, it appears that Petitioner is arguing that the stipulation entered into did not contain all the information that was contained in the report.  While Petitioner is correct that the DNA reports were not admitted in their entirety, this Court has reviewed the reports to which Petitioner is referring and it appears that the reports would have neither established Petitioner's innocence nor seriously contested the prosecution's burden of establishing guilt beyond a reasonable doubt had they been entered in their entirety.

The next part of Petitioner's claim with respect to the DNA evidence is that his attorneys failed to "educate" the jury with respect to DNA testing and evidence.  (Docket No. 14 at 18).  However, a review of the record shows that Petitioner's attorneys effectively argued the weakness of the DNA evidence in their closing.  (T at 5678-79, 5688-89, 5690-5696).  In fact, towards the end of Petitioner's attorney's closing statement he said "the absence of any hard, clear, irrefutable, unequivocal, scientific facts cries out as reasonable doubt in this case."  (T at 5696).  Therefore the assertion that the defense attorneys failed to instruct the jury on the importance of DNA evidence is factually incorrect and Petitioner's claim for habeas relief based on this theory should be DENIED.

14

c.      Time of Death[12]

Petitioner next claims that his attorneys failed to obtain an independent review of the time of death and failed to impeach the testimony of the prosecution's pathologist regarding the time of death.  With respect to the decision not to obtain an independent expert, "the decision whether or not to call an expert witness generally falls within the wide sphere of strategic choices for which counsel will not be second-guessed on habeas review." Stapleton v. Greiner, No. 98 CV-1971, 2000 WL 1207259, at *16 (E.D.N.Y. July 10, 2000); see also Murden v. Artuz, 253 F. Supp.2d 376, 389 (E.D.N.Y. 2001).

In any event, given the ample evidence in the record of Petitioner's guilt,[13] Petitioner has not established that a different decision by his trial counsel would likely have resulted in a different verdict.  Such a showing is a necessary element of an ineffective assistance of counsel claim. Strickland, 466 U.S. at 694.

Petitioner also claims that his trial attorneys failed to impeach the testimony of the prosecution's pathologist as to the time of death.  The pathologist was only able to five a wide range for the time of death and Petitioner apparently seeks to establish that the time of death in a police notebook established that he could not have been the perpetrator. Petitioner asserts that his trial counsel failed to question the pathologist as to a notation in the police notebook that the time of death may have been around 9 p.m.  However, a review of the record demonstrates that on cross-examination by Petitioner's attorney, the

_____

[12]Although this ground is listed in his Amended Petition under the claim of ineffective assistance of counsel, Petitioner's memorandum of law argues the point under the heading of prosecutorial misconduct. This Court will discuss this issue here as it relates to the alleged ineffectiveness of his trial counsel.

[13]The evidence of Petitioner's guilt is outlined below in Section III, B,3, ii under the title of "Sufficiency of the Evidence."

15

pathologist admitted that he was unable to determine the exact time of death.  (T at 2816).
The exchange went as follows:

> Q:     Doctor, based upon all the evidence, particularly the rigor, you're not
>        able to say with any specificity the time of death, are you?
> A:     No.

(T at 2816).  As such, trial counsel obtained an admission that the time of death could not
be established with particularity.  Petitioner has failed to establish that trial counsel's
conduct in this regard was in any way constitutionally ineffective.  In any event, Petitioner
failed to establish that any such error was prejudicial in light of the overwhelming evidence
of guilt.[14]  Accordingly, this claim should also be DENIED.

### d.     Failure to Object to Hearsay Evidence

Petitioner claims that his trial counsel failed to object to various hearsay statements
made by Wanda Gonzalez, the victim's roommate, and Marty McCollum, the victim's
boyfriend.  Specifically, Petitioner asserts that their testimony with respect to statements
made by the victim on the day of her death should have been objected to by his attorneys.
(Docket No. 4).

Gonzalez offered testimony of her conversation with the victim regarding her plans
for the evening of August 4, 1995 as well as Gonzalez' own conversation with Petitioner
who was with the victim. (T at 2254-56).  The testimony regarding the victim's plans for that
evening was only background information and not very relevant to the murder.  However,
the conversation that Gonzalez had directly with Petitioner did establish that he was in the

---

[14]Petitioner also suggests that trial counsel was ineffective because they failed to cross-examine
Martin McCollum, a prosecution witness, regarding alleged discrepancies related to his grand jury
testimony.  This claim fails for lack of prejudice for the reasons set forth below.

victim's apartment and may have been one of the last people to see her alive.  McCollum's testimony as to the victim's plans for the evening was similarly only background information and not relevant *per se* to the murder.

The Appellate Division found that Petitioner failed to preserve this claim for review by timely objection.  Toland, 284 A.D.2d at 805.

### i.    Procedural Bar

Ordinarily, the failure to preserve a claim for appellate review constitutes procedural default and bars federal habeas corpus review. See Manzella v. Senkowski, No. 97-CV-921, 2004 WL 1498195, at *28 (W.D.N.Y. July 2, 2004); Cabassa v. Filion, No. 03 CIV. 2920, 2004 WL 1367503, at *5 (S.D.N.Y. June 16, 2004).

Where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar," such procedural default constitutes independent and adequate state grounds to deny habeas relief. Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotations and citations omitted); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995).  In such cases, a federal court is generally barred from reviewing a petitioner's claims.

In this case, the Appellate Division expressly referenced the fact that Petitioner's claim had not been preserved due to the failure to timely object to the testimony. The appeals court's language indicates that its decision was based primarily upon the fact that the claim had not been preserved for appellate review.  Accordingly, this Court finds that it is barred from reviewing Petitioner's hearsay evidence claim because the Appellate Division's rejection of this claim was clearly based upon the procedural default.  Harris, 489

17

U.S. at 262; see also, Glenn, 98 F.3d at 724.

However, this Court may review Petitioner's claim if he established (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claims would "result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); see also Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

### ii.    Merits of Petitioner's Evidentiary Claim

Petitioner asserts as cause that his trial counsel failed to interpose a timely objection to the testimony.  Assuming *arguendo* that this alleged ineffective assistance of counsel demonstrates cause for the default, Petitioner's claim will still fail because it is meritless.

Ordinarily, state court rulings on evidentiary matters are matters of state law and "are not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness."  Rosario v. Kuhlman, 839 F.2d 918, 924-25 (2d Cir. 1988); see also, Lipinski v. People of New York, 557 F.2d 289, 292 (2d Cir. 1977) ("The states have traditionally been accorded great latitude in determining rules of evidence to govern proceedings in their own courts.  In this sensitive area, characterized by delicate and interrelated judgments of fairness and efficiency, the federal courts have trod lightly to refrain from abrasive disruptions of state procedures and to avoid rigidity in an area of law that should be, above all others, empirical.").

The Second Circuit Court of Appeals has noted that in order for a petitioner to prevail on these claims, he would have to show that "the erroneously admitted evidence, [when] viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed

18

on the record without it." Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985); see Dunnigan v. Keane 137 F.3d 117, 125 (2d Cir. 1998). The evidence must be "'crucial, critical, [and] highly significant.'" Collins, 755 F.2d at 19 (internal citations omitted).

As set forth above, the evidence at issue in this claim was merely background information about the events leading up to the victim's death and was not "crucial, critical, [and] highly significant." Collins, 755 F.2d at 19.

Moreover, the victim's statements had particular evidentiary value. While Gonzalez and McCollum were testifying as to hearsay conversations they had with the victim on the day of her murder, those conversations were relevant to the victim's "state of mind" at the time of those conversations as they established the victim's intent to do an act in the future and tended to explain what lead to the search for her by Gonzalez. As a result, Gonzalez and McCollum's testimony were admissible under New York's "state of mind" exception to the hearsay rule. See Toland, 284 A.D.2d at 805 (discussing other similar testimony and citing to People v. Malizia, 92 A.D.2d 154 (1st Dep't 1983)).

As for the testimony from Gonzalez that she spoke with Petitioner, that evidence was being used to establish Petitioner's presence in the victim's apartment and not for the truth of anything he said to Gonzalez. Therefore, that testimony was not hearsay. Thus, counsel's perceived failure to raise an objection on that basis did not constitute ineffective assistance of counsel.[15] Moreover, even if the testimony was arguably inadmissable hearsay, any error in failing to object to the same was harmless due to the overwhelming evidence of Petitioner's guilt. See Brown v. Walker, 275 F. Supp.2d 343, 351 (E.D.N.Y.

---

[15]Any statements made by Petitioner, and offered for the truth of the matter asserted, would have been admissible anyways as a party admission.

2003) ("There is no reasonable probability that the result of petitioner's trial would have been different even if all of the contested hearsay testimony had been deemed inadmissible by the trial court upon an objection from defense counsel."). Therefore, Petitioner cannot prevail on this claim.

Accordingly, Petitioner's claim for habeas relief based on this theory should be DENIED.

### e.    Right to Testify

Petitioner claims that his trial counsel should have moved to dismiss the indictment prior to trial.  Petitioner argues that such a motion would have been granted because he had been precluded from testifying in front of the grand jury.

It is well settled that alleged errors in grand jury proceedings are not cognizable on federal habeas corpus review.  As this Court has previously explained, "[t]he trial jury's guilty verdict necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict the defendant, but also that the defendant was 'in fact guilty as charged beyond a reasonable doubt.'" Burden v. Filion, 421 F. Supp.2d 581, 589 (W.D.N.Y. 2006) (quoting United States v. Mechanik, 475 U.S. 66, 68, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)); see also Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).  Accordingly, any alleged errors that trial counsel made with respect to possible challenges to the indictment were rendered harmless as a matter of law by the trial jury's verdict.  Petitioner's claim of ineffective assistance of counsel with respect to testimony before the grand jury should be DENIED.

Petitioner also asserts that his trial counsel improperly failed to permit him to testify at trial.  Petitioner fails to offer any factual support for this assertion.  Indeed, a review of

the record reveals why Petitioner's trial counsel likely would not have wanted to subject him to cross-examination.  For example, Petitioner had a prior criminal record, he provided contradicting statements regarding his activities on the night of the murder, he admitted that he was attempting to "make love" with the victim and that he tied her up, amongst other damaging evidence.  See (T at 1648-50, 1733-34, 1738-39, 2004-05, 3460,3483, 3485, 3511-12, 4102-04, 4142, 4160, 5659, 5662, 5767).   Accordingly, not only is this claim too vague to state a claim for relief, it is in any event, meritless and should be denied.

### 2.      Admission of Evidence Concerning Other Crimes and Wrongs

Petitioner also contends that his constitutional due process right to a fair trial was violated through the improper admission of certain evidence at trial.  Specifically, Petitioner objects to the admission of evidence regarding his possible involvement  in the murder of a woman named Paulette Dempster under circumstances similar to the crime at issue, as well as evidence with respect to his sexual practices and treatment of other women, the physical similarities of his girlfriends, his drug use, and his interest in engaging in sexual activity involving bondage.[16]  Petitioner asserts that the admission of evidence of uncharged crimes was highly prejudicial to his case and in error.

With respect to this claim, the Appellate Division, Third Department found that:

> The evidence presented by the People linked defendant to Dempster's murder and established by clear and convincing evidence that defendant had an expressed penchant for engaging in bondage with women in a style that was completely consistent with the manner in

---

[16]For example, the jury was shown videotape of Petitioner engaging in sexual activity involving bondage with a former girlfriend.

which the victim had been bound in this case. Specifically, defendant routinely used shoelaces and socks on women and selected women with strikingly similar physical characteristics. In addition, the evidence showed defendant's tendency to react to stresses in his "primary" relationships by victimizing a "secondary" target.

People v. Toland, 284 A.D.2d at 804.

With respect to the evidence admitted against Petitioner of uncharged crimes, the

Appellate Division found that:

Applying the analysis set forth in People v. Alvino[17] . . ., we conclude, first, that the evidence proffered by the People was "probative of a legally relevant and material issue before the court" ( id., at 242, 525 N.Y.S.2d 7, 519 N.E.2d 808) and, second, that a balancing of "the degree of probativeness" against "the potential for prejudice" ( People v. Ventimiglia, supra, at 359-360, 438 N.Y.S.2d 261, 420 N.E.2d 59) favored its admission. In our view, the evidence under consideration here was highly probative on the issue of defendant's motive for killing the victim, a person whom he hardly knew and against whom he harbored no apparent ill-will, and also served to contradict the defense of coincidence or "innocent explanation" for defendant's presence at the victim's apartment immediately before her death. Further, given defendant's repudiation of his prior admission that he hogtied the victim and left her on the bed in Gonzales' room, the evidence was highly probative on the issue of the identity of the person who bound the victim and, presumably, thereafter killed her. Significantly, although defendant's admission tended to identify him as the perpetrator, the People "were not bound to stop after presenting minimum evidence but could go on and present all the admissible evidence available to them, regardless of the trial strategy defendant adopted" ( People v. Alvino, supra, at 245, 525 N.Y.S.2d 7, 519 N.E.2d 808). Finally, although evidence of a defendant's prior homicide always carries the potential for prejudice, we note that County Court observed all of the established procedural safeguards before receiving the evidence and defendant had more than adequate prior notice that the evidence would be used against him.

Id. at 805.

---

[17]People v. Alvino, 728 N.Y.2d 233 (1987).

As set forth above, state court rulings on evidentiary matters are matters of state law and "are not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness." Rosario, 839 F.2d at 924-25; see also, Lipinski, 557 F.2d at 292.

Petitioner has failed to demonstrate that the admission of this evidence was an error of state law or that the Appellate Division's determination in this regard was an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).

The trial court conducted a five day Ventimiglia hearing regarding the evidence in question.[18] Following the hearing, the trial court carefully weighed the probative value of the evidence against its likely prejudicial effect and determined the evidence was admissible to establish the identity of Petitioner and his *modus operandi*.  The Appellate Division noted that "[u]nder County Court's analysis, the existence of close parallels between defendant's encounters with Dempster and with the victim and his subsequent efforts to shift the blame to others justified admission of that evidence under several recognized Molineux exceptions, including motive, intent and absence of mistake." Toland, 284 A.D.2d at 803.

Although the evidence at issue was highly significant, this Court finds Petitioner

---

[18]A hearing pursuant to People v. Ventimiglia, 52 N.Y.2d 350 (1981) is held to determine whether to admit evidence of uncharged crimes after a balancing of the prejudicial impact of the evidence against its probative value.

has failed to demonstrate the state court's conclusion that the probative value of the evidence outweighed the prejudicial effect amounted to an error of constitutional magnitude.   See, e.g.,Edme v. Girdich, 01-CV-3069, 2003 WL 22284170, at *11 (E.D.N.Y. Aug. 20, 2003) (petitioner's due process rights not violated by admission of prior sexual assault conviction); Kanani v. Phillips, No. 03 Civ.2534, 2005 WL 2431416, at *2 (S.D.N.Y. Oct. 3, 2005) (admission of evidence regarding prior sexual assaults and petitioner's sexual relationships did not constitute due process violation); Urena v. Lape, 373 F. Supp.2d 449, 455 (S.D.N.Y. 2005) (admission of uncharged drug crimes did not violate due process).

The subject evidence would have been admissible under the Federal Rules of Evidence, which further suggests that the introduction of the evidence did not violate Petitioner's due process rights. See Fed. R. Evid. 404 (b) (evidence of prior misconduct is not admissible to prove bad character, but may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of accident or mistake") see also Long v. Donnelly, 335 F. Supp.2d 450, 462 (S.D.N.Y. 2004) (noting that "[a]dmission of evidence that satisfies [the federal rules of evidence] will not violate a [state] criminal defendant's due process rights or provide a basis for habeas corpus relief").

Lastly, the trial court provided the jury with a proper limiting instruction regarding the purpose of the evidence in question. See (T at 5877-81, 5888).   "Viewing the evidence of alleged uncharged crimes in light of the proper instructions before the jury, the admission of [the evidence] cannot constitute a due process violation." Urena, 373 F. Supp.2d at 455.

24

Accordingly, Petitioner's claim for habeas relief based upon the admission of evidence of other crimes and wrongs should be DENIED.

### 3.   Sufficiency of the Evidence

Petitioner's third claim for habeas relief is that the evidence against him was entirely circumstantial and was insufficient to prove his guilt.  Respondent argues this claim was not submitted to the New York Court of Appeals, and therefore Petitioner failed to fully exhaust this claim.[19]

### i.   Failure to Exhaust

A habeas petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack before seeking a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994). The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. See Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir.2000) (citing Grey v. Hoke, 933 F.2d 117, 119 (2d Cir.1991)). A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim. Grey, 933 F.2d at 119-20.

In the past, a state prisoner's federal habeas petition had to be dismissed if the petitioner did not exhaust available state remedies as to any of his federal claims. See Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This

---

[19]The claim was also not included in Petitioner's initial brief to the Appellate Division, although it was included in his supplemental brief.

25

exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

However, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).

An exception to the exhaustion requirement set forth in Rose v. Lundy, has been provided for by statute.  Now, pursuant to the 1996 amendments to 28 U.S.C. § 2254, a district court may, in its discretion, deny on the merits habeas petitions containing unexhausted claims. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

Section 2254(b)(2) allows a district court to reach the merits of a habeas corpus petition despite nonexhaustion, thereby "effectuat[ing] congressional intent, conserv[ing] judicial resources, and afford[ing] petitioner prompt adjudication of his claim." Steele v. Walter, 11 F. Supp.2d 252, 257 (W.D.N.Y.1998) (quoting Cowan v. Artuz, 1996 WL 631726, at *5 (S.D.N.Y.1996)) (quoted in Loving v. O'Keefe, 960 F.Supp. 46, 49 (S.D.N.Y.1997)).

The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits, but the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for dismissing

26

unexhausted claims. Naranjo v. Filion, 2003 WL 1900867, at *8 (footnote omitted) (citing Hammock v. Walker, 224 F.Supp.2d 544, 548-49 (W.D.N.Y.2002); Cruz v. Artuz, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002); Pacheco v. Artuz, 193 F.Supp.2d 756, 761 (S.D.N.Y.2002); Rowe v. New York, 2002 WL 100633, at *5 (S.D.N.Y. Jan.25, 2002); Love v. Kuhlman, 2001 WL 1606759, at *5 (S.D.N.Y. Dec.12, 2001); Shaw v. Miller, 2001 WL 739241, at *2 n. 2 (E.D.N.Y. June 26, 2001); Santana v. Artuz, 2001 WL 474207, at *3-4 (S.D.N.Y. May 1, 2001)).

A minority of courts in this Circuit have expressed the test as whether "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." Id. (quoting Hernandez v. Lord, 2000 WL 1010975, at *4-5 & n. 8 (S.D.N.Y. July 21, 2000)) (internal quotations omitted) (analyzing the diverging views without deciding which standard is appropriate); see also Padilla v. Keane, 2000 WL 1774717, at *3 (S.D.N.Y. Dec.4, 2000); Orraca v. Walker, 53 F.Supp.2d 605, 611 (S.D.N.Y.1999); Basnight v. Keane, 2001 WL 901139, at *5 n. 1 (E.D.N.Y. July 31, 2001) (articulating "nonmeritorious" standard rather than "patently frivolous," although claims failed either standard). The Second Circuit opted for the "patently frivolous" test in Jones v. Senkowski, 2001 WL 1230800, at *4 (2d Cir. Oct.5, 2001), but that decision was later vacated and withdrawn. Naranjo, 2003 WL 1900867, at *8 n. 14 (citing Jones v. Senkowski, 42 Fed.Appx. 485 (2d Cir. May 22, 2002), amended by Jones v. Senkowski, 42 Fed.Appx. 485, 2002 WL 1032589 (2d Cir. May 22, 2002), cert. denied, 537 U.S. 1177, 123 S.Ct. 1005, 154 L.Ed.2d 923 (2003)).

### ii.    Merits

27

In the present case, this Court concludes that Petitioner's claim with regard to the sufficiency of the evidence is patently frivolous. Accordingly, the claim may be addressed and denied on the merits.

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted). A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

Petitioner asserts there was insufficient evidence to convict him due to an alleged lack of DNA and other scientific evidence. However, a review of the trial transcript

28

reveals that there was ample evidence for a rational trier of fact to convict him.  For example, there was Petitioner's own admission to the police that he was in the apartment with the victim on the day of the murder and, although the defense disputed it, evidence that Petitioner admitted that he left the victim "hog-tied" on the bed.  (T at 1733-34, 1738-39, 2004-05, 3460, 4951-55, 5659, 5662).

Additionally, there was Gonzalez's testimony that she spoke to Petitioner while he was with the victim in her apartment on August 4, 1995.   (T at 2254).  There was evidence of Petitioner's admission to police that he had a habit and practice of tying women up during sex, as well as video tape of Petitioner engaging in sexual bondage.  (T at 4113-8).  There was testimony and evidence from several former girlfriends of Petitioner about his tying them up during sexual activity as well as other physical abuse.  (T at 1544, 1548, 155-76, 1595-98, 4554-66, 4581-88, 4592-99).

Also, there was evidence of Petitioner's troubled state of mind after being arrested just a couple of days prior to the victim's murder for harassment on a complaint from his girlfriend of nine years.  (T at 1813-41).   There were letters of outrage and anger to his former girlfriend and brother introduced at trial where Petitioner stated that "I [sic] getting to the breaking point." (RA[20] 53).

Moreover, there was evidence confirming that Petitioner suddenly left Schenectady on August 5, 1995, the day after the murder, some time after noon, with a one-way bus ticket purchased by his father in St. Louis, Missouri early that morning.  (T at 3366-89).  In addition, the prosecution introduced evidence surrounding the similar

---

[20]References preceded by the letters "RA" are to the Respondent's Appendix before the Appellate Division, Third Department in this case.

circumstances of Paulette Dempster's murder, her connection to Petitioner, the similarities in the appearance of the victims and in the explanations he offered as to his presence with each of the victims shortly before their deaths.[21]

In light of this evidence, as well as all of the other evidence presented at trial, this Court finds that Petitioner has not met his "heavy burden" of showing that no rational trier of fact could have concluded that he was guilty beyond a reasonable doubt. See Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) ("A jury's verdict 'may be based entirely on circumstantial evidence,' . . . and the government's case need not refute every possible hypothesis supporting a defendant's innocence.") (internal citations omitted); Brumfield v. Stinson, 297 F. Supp.2d 607, 617 (W.D.N.Y. 2003) ("The jury is . . . permitted to 'draw reasonable inferences from basic facts to ultimate facts.'"); Gonzalez v. Reiner, 177 F. Supp.2d 211, 218 (S.D.N.Y. 2001) ("The burden on petitioner is 'very heavy' because all inferences are to be drawn in the prosecution's favor, and 'a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility.'").

Accordingly, Petitioner's claim that the evidence was insufficient to establish his guilt is meritless and should be DENIED.

### 4.    **Brady** Violations

In Petitioner's fourth ground for habeas relief, he asserts that his conviction was obtained by the unconstitutional failure of the prosecution to disclose favorable evidence

---

[21]Trial exhibit photos of Paulette Dempster and Jackie Polomaine are included in the record before this Court, and the striking similarities in their appearances is notable.  See (RA at 51 and 52)

to him prior to the verdict.  Specifically, Petitioner contends that the prosecution failed to disclose a two page FBI laboratory report containing results from various forensic testing.  In addition, Petitioner argues that the prosecution improperly failed to turn over certain "phone dump" records regarding the telephone call made by Gonzalez to the victim on the night of the murder.

Under Brady v. Maryland, the prosecution is obligated to disclose material evidence that is favorable to the accused.  See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).  The Supreme Court has held that "there are three components of a true Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued."  Id.; see also Boyette v. Lefevre, 246 F.3d 76, 89 (2d Cir.2001).

In the present case, Petitioner raised this Brady claim in his CPL § 440 motion. The trial court reviewed the evidentiary record and issued a written Decision and Order dated June 14, 2000.  With respect to the FBI report, the trial court found that the report had, in fact, been disclosed by the prosecution to Petitioner's trial counsel.  (Record on Appeal, Volume 2, at R 394).  The actual suppression of evidence is a required element of a Brady claim.  As such, the trial court's finding that the FBI report was disclosed was fatal to any Brady claim asserted on that basis.  See Campbell v. Greene, 440 F. Supp.2d 125, 154 (N.D.N.Y. 2006) (holding that because petitioner "did not demonstrate that the District Attorney failed to timely provide defense counsel" with alleged exculpatory evidence, "this aspect of petitioner's Brady claim is plainly without

31

merit").

The Appellate Division did not specifically discuss this claim, but concluded that Petitioner's "remaining contentions, including those raised in his pro se brief and addressed to the denial of his CPL article 440 application" were either unpreserved or "lacking in merit." Toland, 728 N.Y.S. 2d at 546. Because there was no suggestion that Petitioner's argument regarding the alleged non-disclosure of the FBI report was unpreserved, it appears that this claim was one of the claims that the Appellate Division deemed "lacking in merit." See Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001) (holding that a one-word denial of a claim is an adjudication on the merits for purposes of AEDPA review).

On habeas review, this Court must presume that the state court's factual determination was correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1) (providing that "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence"); Leslie v. Artuz, 230 F.3d 25 (2d Cir. 2000).

Petitioner has failed to provide any evidence, let alone clear and convincing evidence, to suggest that the trial court's factual finding regarding the disclosure of the FBI report was erroneous. See Mallet v. Miller, 432 F. Supp.2d 366, 377 (S.D.N.Y. 2006) ("[T]he mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief."); Strickler v. Greene, 527 U.S. 263, 286, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral

review."); <u>United States v. Avellino</u>, 136 F.3d 249, 261 (2d Cir.1998) ("In the absence of a proffer by [defendant] of any nonspeculative basis for inferring that ... the government had not made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary.")).

Regarding the "phone dump" records, Petitioner argues that the prosecution failed to disclose telephone records showing when Gonzalez called on the victim on the night of the murder.  At trial, Gonzalez testified that she placed the call and spoke with the victim at approximately 6:30 p.m. (T. at 2254).   Petitioner suggests, without evidentiary support, that the "phone dump" records would have revealed that the call had been placed at a different time.

The trial court concluded that Petitioner's argument lacked evidentiary support and, in any event, even if the phone records showed that Gonzalez made the call at 6:00 p.m. (*i.e.* the time alleged by Petitioner in his § 440 motion), "such information would [not have been] . . . exculpatory nor would such information likely have altered the outcome of the trial." (R at 394-395).

Respondent concedes that the "phone dump" records were not disclosed, but asserts that the records in question did not provide an indication as to when the subject phone call was made.  (Respondent's Memorandum of Law, Docket No. 19, at pp. 26-27).  Once again, the Appellate Division did not specifically discuss this issue, but it appears that it was among the claims determined to be "lacking merit." <u>Toland</u>, 728 N.Y.S. 2d at 546.

This Court finds that the Appellate Division's denial of Petitioner's claim did not

involve an unreasonable application of clearly established Federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  To wit, even assuming *arguendo* that the "phone dump" records showed that the call was made at 6:00 p.m., such evidence would have been of limited probative value. There is no reasonable probability that the disclosure of the records would have changed the outcome of the trial, particularly given the voluminous evidence against Petitioner, including his admissions regarding his presence in the apartment and his conduct concerning the victim while there. See Oquendo v. Senkowski 452 F.Supp.2d 359, 366 (S.D.N.Y. 2006) (to obtain relief based upon Brady violation, "petitioner must show that there is a reasonable probability that the non-disclosure altered the trial's outcome"); Brown v. McKinney, 358 F. Supp.2d 161, 172 (E.D.N.Y. 2005) ("Most importantly, petitioner has failed to demonstrate that any prejudice ensued from the prosecution's failure to provide him with these items.").

For the foregoing reasons, Petitioner's Brady claims should be DENIED.


**5.    Circumstantial Evidence Jury Charge**

Petitioner next argues that the county court erred in refusing to instruct the jury that the evidence against Petitioner was "entirely circumstantial" and also refused to include "moral certainty" language in its charge.  (Docket No. 4 at "Ground Five").

It is well-established that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' ")

(quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)).

Before a federal court may overturn a conviction resulting from a state trial in which an erroneous instruction was used, or a properly requested instruction was not given, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." <u>Cupp v. Naughten</u>, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); <u>accord</u>, e.g., <u>Davis v. Strack</u>, 270 F.3d 111, 123 (2d Cir.2001). Clearly, a habeas petitioner has a difficult showing to make in order to succeed on a claim that a jury instruction was erroneously refused.

With regard to the propriety, as a matter of state law, of Petitioner's request for an instruction in circumstantial evidence, under New York law, a circumstantial evidence jury charge is only required at the defendant's request when the evidence against a defendant is comprised solely of circumstantial evidence. E.g., <u>People v. Daddona</u>, 81 N.Y.2d 990, 992, 599 N.Y.S.2d 530, 615 N.E.2d 1014 (N.Y.1993) ("Whenever a case relies wholly on circumstantial evidence to establish all elements of the charge, the jury should be instructed, in substance, that the evidence must establish guilt to a moral certainty."); <u>People v. Barnes</u>, 50 N.Y.2d at 380, 429 N.Y.S.2d 178, 406 N.E.2d 1071.

In the present case, the trial court gave a lengthy circumstantial evidence charge to the jury explaining the difference between direct and circumstantial evidence and the inferences that could be drawn from either. (T at 5888- 5898).  Petitioner wanted the charge to clearly state that the evidence against Petitioner was entirely circumstantial and also wanted "moral certainty" language included.  However, when the case is also

supported by direct evidence, it does not qualify for the circumstantial evidence instruction, and the trial court need not give the so-called "moral certainty" circumstantial evidence standard. People v. Daddona, 81 N.Y.2d at 992, 599 N.Y.S.2d 530, 615 N.E.2d 1014 (citations omitted); accord People v. Roldan, 88 N.Y.2d 826, 827, 643 N.Y.S.2d 960, 666 N.E.2d 553 (N.Y.1996) (holding that case against defendant involved direct evidence-namely eyewitness testimony which, if believed by the jury, established that defendant engaged in acts which directly proved that at the very least he acted as a lookout while the crime was being committed, along with conduct before and after the actual commission of the crime; defendant's accessorial guilt could not be viewed as premised solely on circumstantial evidence, and, thus, did not qualify for the circumstantial evidence instruction).

Here, the trial court properly denied defense counsel's request for the "moral certainty" circumstantial evidence jury instruction because the case against Petitioner was also supported by credible direct evidence.  The trial court stated that the direct evidence included Petitioner's presence in the victim's apartment the day she was killed, a disagreement between them, and Petitioner tying the victim up, as well as his own statements regarding his involvement.  (T at 5591-93).  On this basis alone, the trial court properly denied Petitioner's request for a "moral certainty" charge.

In any event, even if it were possible that a "moral certainty" charge was warranted, the trial court's failure to issue a properly requested jury charge does not, standing alone, violate petitioner's right to due process. E.g., Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir.1990).

Rather, "[f]or an erroneous state jury charge [or the failure to give an appropriate

requested one] to result in a federal constitutional deprivation, 'the ailing instruction by itself [must have] so infected the entire trial that the resulting conviction violates due process.' " Id. (quoting Cupp, 414 U.S. at 147, 94 S.Ct. 396 (alteration in original)).

In Blazic, the Second Circuit concluded that although petitioner was entitled under New York law to a justification charge on the facts of his case, habeas relief was nevertheless not warranted because there was "no basis to conclude that a jury would have responded differently had the charge been given." Blazic, 900 F.2d at 543. The Second Circuit rejected petitioner's contention that the trial court's omission of a justification charge " 'so infected the entire trial that the resulting conviction violate[d] due process.'" Id. (quoting Cupp, 414 U.S. at 147, 94 S.Ct. 396).

Here, as in Blazic, the Court does not discern any basis for finding that the jury would have acquitted Petitioner had it heard the "moral certainty" or "entirely" circumstantial evidence charge. Therefore, the omission of the charge did not "so infect[ ] the trial that the resulting conviction violate[s] due process," Blazic, 900 F.2d at 543 (quoting Cupp, 414 U.S. at 147, 94 S.Ct. 396). Even assuming that a circumstantial evidence charge should have been given, which this Court explicitly holds was not the case, any error was harmless in light of the overwhelming evidence against Petitioner. See Davis v. Strack, 270 F.3d 111 (2d Cir.2001). Accordingly, this claim for habeas relief should also be DENIED.


**6.      Hearsay Statements of the Victim**

In Petitioner's last ground for habeas relief, he asserts that the trial court erred in admitting the hearsay testimony of Gonzalez, McCollum, and Debra Dickershaid as

37

to what the victim was doing or planning to do on the day she was killed.  Respondent

argues that Petitioner failed to exhaust his remedies with respect to this claim and that

it is now procedurally defaulted.  The merits of this claim, with respect Gonzalez' and

McCollum's testimony is the same as that asserted by Petitioner in his ineffective

assistance of counsel claim previously discussed.  Therefore, even assuming arguendo

that Petitioner did not default this claim, and in keeping with the principle of judicial

economy, for the reasons set forth by this Court in Section III.B.1.d.ii, this claim is

meritless as the testimony he contests falls within an the "state of mind" exception to

the hearsay rule.

    With respect to the testimony of Debra Dickershaid, Petitioner objects to her

testimony regarding statements the victim made on August 4, 1995 that a "Chuck"

asked her for a date, but that she was going to meet her boyfriend instead.  Respondent

argues that this claim is procedurally defaulted.  However, because the claim is

meritless, and in the further interest of judicial economy, this Court will briefly discuss

its merits.

    When deciding this very claim, the Appellate Division found that "the evidence

was admissible for the purpose of showing the victim's state of mind at the time of the

declaration. Under the 'state of mind' hearsay exception, a deceased declarant's

statement of intent to meet someone would be admissible 'where the statement is made

under circumstances that make it probable that the expressed intent was a serious one,

and that it was realistically likely that such a meeting would in fact take place'" Toland,

284 A.D.2d at 805 (quoting  People v. Malizia, 92 A.D.2d 154, 160, 460 N.Y.S.2d 23,

affd. 62 N.Y.2d 755, 476 N.Y.S.2d 825, 465 N.E.2d 364, cert. denied 469 U.S. 932, 105

S.Ct. 327, 83 L.Ed.2d 264).

Petitioner has not demonstrated that this finding of the Appellate Division was based upon an unreasonable determination of the facts or that it was contrary to or an unreasonable application of clearly established Supreme Court precedent. Accordingly, Petitioner's sixth ground for habeas relief should also be DENIED.


## IV. CONCLUSION

For the reasons stated above, the Court recommends Charles Toland's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).


Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge



DATED:      August 20, 2007

Syracuse, New York


39

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir.

40

1988).

SO ORDERED.

August 20, 2007

Victor E. Bianchini
United States Magistrate Judge